CLERK'S OFFICE U.S. DIST. COURT
FILED

7:22-cv-00349

June 28,2022

JULIA C. DUDLEY, CLERK
BY: /s/T. Taylor
DEPUTY CLERK

CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAY 0 6 2022

JULIA C. DUDLEY, CLERK
BY: _____
DEPUTY CLERK

**IN THE UNITED S**
**EASTERN DISTRICT OF VIRGINIA**

**COMPLAINT UNDER CIVIL RIGHTS ACT 42 U.S.C. § 1983**

Action Number  7:22·CV·00247

(To be supplied by the Clerk, U.S. District Court)

Please fill out this complaint form completely.  The Court needs the information requested in order to assure that your complaint is processed as quickly as possible and that all your claims are addressed.  Please print/write legibly or type.

**I.    PARTIES**

A.    Plaintiff:

   1.    (a) _Demmerick E. Brown_    (b) _1131268_
          (Name)               (Inmate number)
      _Augusta Cor. ctr._
      (c) _1821 Estaline Valley Rd._
           (Address)

      _Craigsville, Va. 24430_

**Plaintiff MUST keep the Clerk of Court notified of any change of address due to transfer or release.  If plaintiff fails to keep the Clerk informed of such changes, this action may be dismissed.**

**Plaintiff is advised that only persons acting under the color of state law are proper defendants under Section 1983.  The Commonwealth of Virginia is immune under the Eleventh Amendment.  Private parties such as attorneys and other inmates may not be sued under Section 1983.  In addition, liability under Section 1983 requires personal action by the defendant that caused you harm.  Normally, the Director of the Department of Corrections, wardens, and sheriffs are not liable under Section 1983 when a claim against them rests solely on the fact that they supervise persons who may have violated your rights. In addition, prisons, jails, and departments within an institution are not persons under Section 1983.**

B.    Defendant(s):

   1.    (a) _Harold W. Clarke_    (b) _Director_
          (Name)            (Title/Job Description)

      (c) _VDOC 6900 Atmore Dr._
           (Address)

      _Richmond, Va. 23225_

2

2.   (a) _David A. Robinson_          (b) _Chief of Operation_
         (Name)                              (Title/Job Description)

     (c) _VDOC 6900 Atmore Dr._
         (Address)

         _Richmond, Va. 23225_

3.   (a) _George M Hinkle_             (b) _Chief A Sm._
         (Name)                              (Title/Job Description)

     (c) _VDOC 6900 Atmore Drive_
         (Address)

         _Richmond, Va. 23225_

If there are additional defendants, please list them on a separate sheet of paper. Provide all identifying information for each defendant named.

**Plaintiff MUST provide a physical address for defendant(s) in order for the Court to serve the complaint. If plaintiff does not provide a physical address for a defendant, that person may be dismissed as a party to this action.**

## II.   PREVIOUS LAWSUITS

A.   Have you ever begun other lawsuits in any state or federal court relating to your imprisonment?   Yes [ ✓ ]   No [   ]

B.   If your answer to "A" is Yes: You must describe any lawsuit, whether currently pending or closed, in the space below. If there is more than one lawsuit, you must describe each lawsuit on another sheet of paper, using the same outline, and attach hereto.

1.   Parties to previous lawsuit:

Plaintiff(s) _Dommerick E. Brown_

Defendant(s) _Karen Brown, Wendy Brown, Harold W. Clarke_

_Brown v. Robinson_

2.   Court (if federal court, name the district; if state court, name the county):

_United States District Court, Alexandria_

3.   Date lawsuit filed: _Dec 2017 — Oct 1, 2020_

4.   Docket number: _1:17-cv-00052 - Appeal No 20-6448_

3

5.   Name of Judge to whom case was assigned: *Claude M. Hilton*
*U.S. District Court – Alexandria Division*

6.   Disposition (Was case dismissed? Appealed? Is it still pending? What relief was granted, if any?):
*Case was dismissed – Appeal was filed, and granted Counsel was Appointed.*

## III.   GRIEVANCE PROCEDURE

A.   At what institution did the events concerning your current complaint take place: _____
*Nottoway – Red Onion*

B.   Does the institution listed in "A" have a grievance procedure? Yes [ ✓ ]  No [   ]

C.   If your answer to "B" is Yes:

1.   Did you file a grievance based on this complaint? Yes [ ✓ ]  No [   ]

2.   If so, where and when: *July 13 2020, Nottoway corr. ctr.*

3.   What was the result? *Access to the grievance Procedural denied.*

4.   Did you appeal? Yes [ ✓ ]  No [   ]

5.   Result of appeal: *denied - It was held the grievance was Untimely filed.*

D.   If there was no prison grievance procedure in the institution, did you complain to the prison authorities? Yes [   ]  No [   ]

If your answer is Yes, what steps did you take? *I filed complaint with Harold W. Clark, David A. Robinson, Hinkle Gensinger.*

E.   If your answer is No, explain why you did not submit your complaint to the prison authorities:

_____

_____

4

## IV.    STATEMENT OF THE CLAIM

State here the facts of your case.  Describe how each defendant is involved and how you were harmed by their action.  Also include the dates, places of events, and constitutional amendments you allege were violated.

If you intend to allege several related claims, number and set forth each claim in a separate paragraph.  Attach additional sheets if necessary.

- Claim I. Plaintiff alleges that he was subjected to abuse, arbitrary actions, and cruel and unusual punishment, and equal protection violation. See attach Claim I.

- Claim II. Plaintiff alleges that he was subjected to retaliation. See attach II.

- Claim III. Plaintiff alleges he was subjected to cruel and unusual punishment see attachment Claim III.

- Claim IV. Plaintiff alleges his right to be free from retaliatory transfer see Attachment IV.

- Claim V. Plaintiff alleges that he was subjected to false and concocted disciplinary charge in violation of his Due Process Rights see Attachment V.

- Claim VI. Plaintiff Claim that Prison officials engaged in conspiracy filing false disciplinary charge against him to protect themselves violating his eighth, first, and fourteenth Amend. See attachment VI.

- Claim VII. Plaintiff claim deprivation of Property in violation of his Due Process Rights and Procedural Due Process Rights.

- Claim VIII. Plaintiff claim that Prison officials acted deliberate indifference to his serious medical needs. See attachment styled as claim VIII.

## V.   RELIEF

I understand that in a Section 1983 action the Court cannot change my sentence, release me from custody or restore good time.  I understand I should file a petition for a writ of habeas corpus if I desire this type of relief. _DEBru_ (please initial)

The plaintiff wants the Court to: (check those remedies you seek)

✓ Award money damages in the amount of $ _See Attachment_

✓ Grant injunctive relief by _See Attachment_

✓ Other _See attachment syles Conclusion_

## VI.   PLACES OF INCARCERATION

Please list the institutions at which you were incarcerated during the last six months.  If you were transferred during this period, list the date(s) of transfer.  Provide an address for each institution.

_Augusta Correctional Center,_
_1821 Estaline Valley Rd_
_Craigsville, Va. 24430_

## VII.   CONSENT

CONSENT TO TRIAL BY A MAGISTRATE JUDGE:  The parties are advised of their right, pursuant to 28 U.S.C. § 636(c), to have a U.S. Magistrate Judge preside over a trial, with appeal to the U.S. Court of Appeals for the Fourth Circuit.

**Do you consent to proceed before a U.S. Magistrate Judge:** Yes [ ✓ ] No [    ].  You may consent at any time; however, an early consent is encouraged.

## VIII.   SIGNATURE

If there is more than one plaintiff, each plaintiff must sign for himself or herself.

Signed this _April_ day of _27_ , 20 _22_ .

Plaintiff _Brown, E. Demum_

6

Continue Names of Defendants.

Mark Amonett, Chief Physician,
Christopher J. Gensinger, Central Classification
Manager,

D. Call, Warden
W. Jarrett, Asst. Warden
S. J. Colberson, Unit Manager,
A. Jackson, Grievance Coordinator
Karen Stapleton, Disciplinary Unit Manager,
L.A. Mullins, Disciplinary Hearing Ofc.
B. Farmer - John Doe, prison guards, Sgt.

Defendants.



US POSTAGE PITNEY BOWES

$ 009.25⁰

ZIP 24430
02 4W
0000375357 MAY 02 2022

THE DEPARTMENT OF CORRECTIONS HAS NEITHER CENSORED NOR INSPECTED THIS ITEM AND ASSUMES NO RESPONSIBILITY FOR ITS CONTENT

Donwield E Brown 1/3/262
Augusta Corr. Ctr. D2-22
1821. Estaline Valley Road
Craigsville, Va. 24430

The Hon. Clerk
United States District Court
210 Franklin, S.W. Suit 540
Roanoke, Virginia 24011-2208

Factual Back-Grains

① It Is Aphoristic, however, that Nottoway Correctional Center, Is a two story Concrete structure. All of the Inmates housing Area doesn't have Air Condition. ② Stuff Working locations are Air Conditioned. ③ the Housing Units does not have adequate Ventilation system that provide Fresh air. Only hot air and/or heat blow 24-7 Year round.

④ During the Summer the Concrete structure absord the blazing heat Creating Cruel Conditions that is unbearable, especially for the Elderly and those with life threatening Conditions.

⑤ Approx 230 am In the Morning of June 28, 2020, the power went Out — power outage. Only the Inmates was effected

⑥ LT. Ortiz, who was the Watch Commander LT. Ortiz authorizes the Inmates to Sit In the Pod.

①

Back ~~claim~~, Grevins

LT. Ortiz Instructes Ofc. Thomas, who was the acting building Sgt. to connect the wall fans in the Pod to the Officer Control booth, and to fill up the Ice Cooler. And he will call the Kitchen to have them to send to the Pods Ice water bags.

7). LT. Ortiz Advises the Inmates that he cannot leave the cell doors Open because of security and safety reasns.

8). Sgt. Thomas Calles the Pod workers. Out into the hallway to the Ice Machine. to fill Up the Ice Coolers.

9) Asst. Warden, W. Jarrett. arrives in the hallway of the building. He Immediately Orderes the Inmates to go back to their Pod, to take the Coolers with them. There will be No Ice given Out. The Asst. Warden Instructes Sgt. Thomas lock the Ice Machine, no Ice

(7)

Is to be given Out to the Inmates.
The Inmates returnes to the Pod
and Informes everyone that the Asst.
Warden Instructed Sgt. Thomas to
lock the Ice Machine and not to
give Inmates any Ice.

10). LT. Ortiz In the Control booth
tulking to the Inmates Assuring them
that They will be allowes to come
Out Into the Pod Area to Showers
Use the phone On to Sit. LT. Ortiz
advises the Inmates that he cannot
leave the cell doors Open because
leaving the cell doors Open poses
a Security breach and safety Issue.
But he Assures the Inmates he
will make sure he have Ice
brought In and Ice water bags.

11). LT. Ortiz was not aware
that Asst. Warden W. Jarrett had
Ordered the Ice Workers to go back
Into the Pod with the coolers, and

3

Back ~~Grounds~~. Grounds

Instructed Sgt. Thomas not to give out any Ice to Inmates. the Inmate Pod Workers Approaches the Control booth Angry Expressing Their profound disagreement with the Asst. Warden's deliberately Ignoring the Inhuman Conditions, their health and safety, Insensitivity, and nasty and bias Attitude.

12). The Asst. Warden Immediately responded Cutting off the wall fans and telling the Inmates to get in their cell now. because of the Asst. Warden's flagrant defiance of discretion, and despotic Attitude talking to the Inmates in such nasty, rude, and disrespectful Manner, hollering and yelling at them like They are stupid, dump, Ignorant or dogs. It provokes the Inmates not to go in the cells, And

④

Back ~~Claims~~, Claims

While LT. Ortiz trying to calm the situation the Asst. Warden do continue to provoke the Inmates and the Inmates barking back Calling the Asst. Warden a racist, Coward, and tyrant. LT. Ortiz Exited the Control booth Into the hallway, LT. Ortiz Called me to the side door and asked me to Assist him Calming Things down before the Situation gets Ugly. LT. Ortiz asked me to talk to the Inmates and give them the pros and the Cons, and the evil to avoid.

13). As I spoke to the Inmates Sharing with them My Experiences while in prison Caught Up In riots and Demonstrations, the Consequences Suffered for Not Thinking.

The Asst. Warden W. Jarrett Called me to report to the Control booth. The Asst. Warden Instructed me to deliver his Messages to

(5)

Back ~~ground~~ Grounds

the Inmates. Suffice it to say.
that I am caught between the Asst.
Warden and gang members, and five
percenters. The Asst. Warden wants
me to deliver his message, but did
not want me to deliver to him the
Inmates response. I Immediately advised
LT. Ortiz that I am not going to
get Myself caught In the cross
fire With the Asst. Warden and that
I am going to my cell.
I Immediately went to my cell. the
Asst. Warden had Instructed the
control booth officer not to open
no cell doors. so I sit down beside
my cell door Until the LT. told the
booth officer to open. my cell to
let me In. I remained In my cell.

(6)

Back ~~Ground~~ Grounds

14). Approximately 10:45 a.m. the Chief of security, A. Ward and Lt. whitehead entered D2 and asked those Inmates that was In the Pod are they going In Their cell than They performed a security Check. I was In My cell D2-43B.

15). Approximately 11:10 a.m. warden D. Call and LT. Ortiz entered the Pod, and Instructed the Inmates to return to their cells the Inmates refused telling the warden They are not going In the cell's because of the Asst. warden W. Jarrett Disrespect. The warden advised the Inmates he promised to cut the wall fans on and fill the coolers with Ice, and he will call the kitchen to have them bring Ice water bags. But They have to go In the cells for the 11:30 caunt. the Inmate refused. I was In My cell and In the cell during the 11:30 a.m caunt.

(9)

16). Approximately 1:00 p.m. the security strike force approaches my cell, and orderes that I come to the cell door. I was handcuffed and escorted outside along with 21 other inmates to be searched and taking to a waiting bus.

17). As I was being brought out of the building the chief of security said, I know Brown was not involved, he was not in the pod when me and LT. Whitehead went into the pod. Brown was in his cell."

18). LT. Ortiz walked out of the building. I asked Lt. Ortiz to tell the chief of security I was not involved. LT. Ortiz advises the chief of security that I was not involved and that he asked Brown to assist him.

19). Chief of Security advises me to go get on the bus without any problem she will take care of the rest.

Continue From Claim
I.

I bring this claim against Harold W. Clarke, Director, David A. Robinson, Chief of Operation, George M. Hinkle, Chief Regional Administrator, Mark Amonett, Chief Physician, and Christopher J. Gensinger, chief Classification Manager, These prison Officials Subjected me abuse, arbitrary and capricious treatment In Violation of My due process Rights, Subjected me to Cruel and Unusual punishment Under the Eighth Amendment, Subjected me to retaliation In violation of My first Amendment Right, and acted deliberate Indifference to My Serious Medical Condition and Needs.

① On June 30, 2020, because of My Medical Condition, it steeled me to promply Notify each of these prison officials rehearsing a parade of Indignities Visited Upon me. The Impetus for emergency Administrative transfer to a high restrict Security Supermax state prison, and put In punitive Isolation.

①

Continue From claim I.

(2) Plaintiff Vigorously Insist that these prison officials Investigate the June 28, 2020, Group Demonstration, and the Administrative Investigative reports filed by S. Gilberson, D. Call, and W. Jarrett.

(3) I provide these prison officials Sufficient objective, Articulable Facts Names of Staff Witness who refutes W. Jarrett and D. Call, and S. Gilberson Accusation. Moreover, provides evidence that D. Call, W. Jarrett, and S Gilberson acted in bad faith, Vexatiously, Wantonly or for Oppressive reasons, as well as for willful abuse of Administrative process

(4) Buttress it Conclusion On June 28, 2020, Warden D. Call advises the Chief Regional Administrator George M. Hinkle that when he and Lt. Ortiz enter the Pod D2 he Instructed the Inmates to go in their cell. Brown refuses to go in his cell. He advises the Inmates that they must be in their cell for the 11:30 a.m. Count, Brown refuses to go in his cell for Count.

(2)

Continue From claim I.

⑤ Asst. warden h. Jarrett advises
the chief Regional administrator that I
was Involved In the group Demonstration
and encourages others to participate,

⑥ and On June 30, 2020, S. Gilberson,
brought Disciplinary charges Accusing
Me of participating In a group
Demonstration and encouraging others to
participate. She claimes that I Refuses
to go Into My cell per Order of the
Asst. warden and warden.

Suffice it to Say that S. Gilberson
was not On the Sunday Morning of June
28, 2020, At the prison.

⑦ More fundamentally, LT. Ortiz
advises the chief of Security that I
was not Involved and that he and the
Asst. warden W. Jarrett asked D. Brown
to Asst. In encouraging the Inmates
to go In their cell.

Continue From Claim I.

(8) the principal Contention of the plaintiff is that these prison officials failed to Investigate and protecting him against arbitrary abuse and actions. and Subjected him to Cruel and Unusual punishment, retaliation. and deprivation of a fundamental liberty Interest.

(9) It Deems most accurate to. Say that these prison officials deliberately Ignored D. Call, W. Jarrett, and S. Colberson aberrant behavior.

(10) These prison officials Knew of and disregarded an excessive risk to My life, health, and safety. These prison Officials Knew that My life, health, and safety In danger when George M. Hinkle and Christopher J Coensinger Authorized the Assignment to Red Onion Knowing it was a remote location I should not be Confined in.

(4)

Continue From Claim I.

(11) Plaintiff, a 63 yrs old Inmate Suffer a deadly rare heart disease that has resulted in 4 Open heart Surgeries, 2 Implanted Mechanical heart Valves, a IACD Defibrillator/pacer, Plaintiff has Chronic Lung disease.
It is afirm that plaintiff are not to be Confined in a remote area absent of a Major hospital with a trauma Unit within reasonable Distance from a prison.
Plaintiff was transferred far Western Region of Virginia, in a remote Area Where There is no hospital within a reasonable distance Nevertheless, a resue ambulance Emergency service.

(12) Though a prison Official has No Substantial Constitutional duty to respond to grievance, he or she does have a duty to prevent and remedy Constitutional Violations within his or her Supervise and Control.
These prison Officials failed to Investigate.

Claim II.

1). <u>Retaliation</u>

This action brought against
A. Jackson, Institutional Grievance
Coordinator, W. Jarrett, Asst. Warden,
D. Call, Warden, and Christopher J.
Gensinger, Chief Classification Manager.
Alleging that they retaliated against
Me for Exercising My Right to file
a legitimate grievances and to
pursue litigation In Courts.

2). On or bout July 13, 2020, I filed
a second grievance Complaint against
Asst. Warden W. Jarrett, and D. Call,
Warden Grievance No. ROSA-20-INF
01543 Challenging the false and
Concocted Allegation accusing Me of
participating In a Group Demonstration

①

Claim ~~XI~~

That resulted In a retaliatory transfer to Red Onion high restrict security Supermax State Prison, and punitive Assignment. The grievance was rejected by defendant A. Jackson, The Grievance Coordinator arbitrarily claiming that I Used the Wrong grievance form. 3). On August 5, 2020, I resubmitted the grievance Complaint. and defendant A. Jackson assigned the Grievance to defendant W. Jarrett to Investigate and respond Within 15 days. Defendant W. Jarrett does not respond to the grievance At. All.

4) On or bout September 13, 2020 I proceeded to the next grievance level. The grievance Coordinator returned the grievance to me Advising Me That I Must attach The Informal Complaint to the regular grievance Complaint and

②

From claim ~~VII~~

to resubmit the grievance for process.

5). On October 6, 2020, defendant rejected the regular grievance. She arbitrarily ruled that the grievance untimely filed and/or Expired.

Immediately I filed a complaint against defendant A. Jackson with her Supervisor T. Harvey. Alleges that Ms. A. Jackson engaged in a civil conspiracy to block my access to the grievance procedure in an attempt to protect defendant D. call warden, and W. Jarrett, Asst. warden. I pointed to Mr. Harvey the erroneous errors. He upheld defendant A. Jackson ruling despite plain view error.

(3).

Claim ~~VI.~~

6). As "a Collective, and retaliatory measure, to avoid having to respond to any of my grievances against Asst. Warden W. Jerrett and D. Call, Warden, is not to respond, prolong the processing of the grievance, and to alter and damage, or destroy documents Involved in grievance complaint. As part of this scheme " Nefarious scheme," first, the retaliation took the form of (a) Obstructing my Access to the grievance Procedure, (b) All of a sudden prison officials stock piled my Institution prison record with Concocted false security report Classifying me a menace to the prison administration, security, and day-to-day Orderly and safe Operation,

(4)

## Claim VI.

(c). Poor Institutional adjustment,

(d). poor Disciplinary behavior and Conduct

(e). Unfavorable staff reports, (f). lack of participation In rehabilitation programes., (6). On or bout sept. 9, 2020 prison officials held a administrative Classification hearing prison officials recommended that I transfer to security level two Correctional Center, Defendant Christopher J. Gensinger disapproved and Ordered a H-6 override to remain at a Security level three Correctional center, based on the poor Institutional Reports. I remained Confined In a high security prison In punitive status. In approximate 7 months,

h), On or bout september 19, 2020, I was Interviewed for Discretionary Parole.

(5)

Claim ~~V I~~.

Never at No time prior to the classification hearing and parole hearing I was advised of the poor Institutional Reports. During the parole hearing, the Interviewer never made any mention of the Institutional Reports or staff reports. On or about November 2020, I was denied Parole. Based On those false Reports.

Suffice it to say that the Defendant A. Jackson and Gensinger "Obstinately refused to return to me documentary Evidence attached to the grievances. More fundamentally, their novel Attempt to vitiate a valid claim's

7). It Is aphoristic, however, that On June 28, 2020, I was Disciplinary Infraction free, GCA Class level I 30/30, Security level 2, Security point Score 7-9 Satisfactory Institutional adjustment, Satisfactory

(6)

Claim III.

## Cruel And Unusual punishment

"Suffice it to Say that Red Onion" Supermaf" state Prison Is maximum-security state penitentiary with highly restrictive canditions that were designed to segregate the most dangerous prisoners from the general prison system populations. Almost every aspect of an prisoners life Is Controlled and monitored. Moreover, prisoners who were otherwise Eligble for parole are denied parole while Incarcerated at (ROSP.)

① Plaintiff Classification status did not suffice the requirements being Incarcerate at Red Onim Supermaf. Nevertheless put Into the general population.

② It Is aphoristic, however, that Prison Security, Imperiled by the brutal reality of prison gangs,

①

Claim III

Clandestine, organized, fueled by
race-based hostility. and committed
to fear and violence as a means of
disciplining their own members and their
rivals, gangs seek nothing less than
to control and to extend their power
throughout the entire prison system;
and those prison gang members serving
20-life under Virginia no parole law,
and 85% law, the deterrent effects
of ordinary criminal punishment serves
no real purpose. These individuals are
responsible for the criminal enterprise
and violence

③ The prison is infestive with racism
among prison staff and prisoners, Drugs
violence, stabbing, rape, stealing,
robbery extortion, prostitution, and
fraud. Nevertheless, sexual assault.
The conditions regarded as atrocious, and
utterly intolerable ②. I suffered mental

Claim III

anguish, emotional Distress, I was
of fear, sleeplessness, and nervousness
that resulted in a physical mental
and emotional Injury. Unable to Concentrate.

17). On August 3, 2020, plaintiff
states that prison officials Knowingly
and reckless disregarded my life, liberty,
health, and safety when prism officials
arbitrarily put me in general population
In a cell with a Inmate that Is
Mentally and emotinally troubled, One
who Is potentially dangerous. Has no
respect for authority, psychologically
destructive. Has no Concern for life
liberty or property. He's racist, full
of hate. He has a Disciplinary record
that reveals a cavalcade of Misconduct
Including episodes of Violence, Inciting
racial riot, arson, Assault against
prism guards. This Is not the
emblematic of Inmate who Is likely
either to Inspire prism officials

(B) (3)

Claim III

to act favorable on his behalf.

I had to be removed from the cell due to verbal and physical confrontation.

B). On or about September - October 2020, prison officials put me in danger when they again put me in a cell with a off the wall nut who is serving two life sentences for Murder, plus 14 yrs for assaulting his cell-mate. This inmate has a history of violence and prison officials knew this inmate cannot get along with cell-mates. He's ineligible for parole, ineligible to earn good time credit, high security points, high security classification. and his Institutional Disciplinary record extremely concerning. He do not care at all about nothing. and nobody. His escape from reality the use of drugs and alcohol.

④

# Claim III

The security LT. and warden were making security rounds, and heard the verbal confrontation whereas my cell-mate Threatened me. I was Immediately removed from the cell.

The warden Wanted to Know why was I even put In the cell Considering the Circumstances.

6) While In the prison population Unit A6. I Experienced Verbal and physical Altercations with gang Members defending against Extortion, stealing, taking or Robbery of My personal property, being Bullied or a Victim.

7.) <u>Deprived of Rights that are fundamental to liberty.</u>

8.) On or bout August 23, 2020, Disciplinary Investigation Made it pellucid that I was Not Involved

(15)

Claim III

In the June 28, 2020, group Demonstration and that I was requested by the Watch Commander to Assist him getting the Inmates to go In Their Cells. It was also clear that Asst. Warden W. Jarrett Instructed me to assist him.

9) Prison officials At Red Onion Immediately Notified defendant Gensinger and advises him to Immediately remove me from Red Onion and transfer me back to the Sending Correctional Center, Nottoway. Defendant Christopher J. Gensinger disapproves, and arbitrarily and discriminatorily Continued high restrictive and punitive Confinement for approximate 8 More Months. With Knowledge of a Significant risk of harm or serious Injury. He acted deliberately Indifference to his Medical Needs as well.

(32)

Claim IV.

Plaintiff brings this action against Harold W. Clarke, Director, David A. Robinson, Chief of Operation, George M. Hinkle, Chief Regional Administrator, Christopher J. Gensinger, Chief Classification Manager. Alleging that these defendants Violated his Equal protection Rights.

these defendants "had Unwittingly Allowed themselves to become goaded into participating in a civil Conspiracy to Violate my Constitutional Right Under the Equal protection Clause of the fourteenth Amendment. triggering the Violation of My first and Eighth Amendment Right to be free From retaliatory transfer and the Right to be free From Cruel and Unusual punishment.

Harold W. Clarke, David A. Robinson, George M. Hinkle, Christopher J. Gensinger, and

①

Continue From Claim IV.

D. Call, W. Jarrett, and S. Gilberson.
each played Some Role In the retaliatory
and/or Arbitrary transfer from a lower
Security level to. high restrict Supermax
security level.

1) Suffice it to Note primarily for the
record the Very Same Occusation made
against me was also made against 21
other Inmates

2) The morning of June 28, 2020, Defendant
George M. Hinkle, Chief Regional Administrator
was called to Nottoway Correctional Center,
by Warden D. Call., Chief of Security and
Chief of Housing were also called In response
to a Group Demonstration.

3). In My presence Warden D. Call
and Asst. Warden W. Jarrett did
reported to Defendant Hinkle That I
participated In and encouraged others
to participate In the Group Demonstration.

②

Continue From Claim IV.

4). Warden D. Call told the Chief Administrator "When Me and Lt. Ortiz entered the Housing Unit to talk with the inmates inmate D. Brown 1131268 was in the Pod, when I instructed Brown and the others to go in their cell, Brown refused to go in his cell. I advised All of the inmates that they must be in their cell for the 11:30 a.m Count. Brown was in the Pod.

5). Asst. Warden W. Jarrett advises the Chief Administrator that I was involved in the demonstration and encourages others to participate in the Demonstration. I instructed Brown to go in his cell and he refused.

6). Defendant George M. Hinkle Order an Emergency administrative transfer to Red Onion, a high restrict

(3)

Continue From claim IV.

Security (Supermax) state prison. All
22 Inmates were put In punitive Isolation.

7). Two Inmates (assignes to D2-38
were In their cell asleep the entire time
During the event (Demonstration), They too
Was put On the bus and Sent to Red
Onion.

8). Both of these Inmates were
represented by attorneys. The Security
Survilliance Camera rebutes defendant
Warden D. Cell, Asst. Warden, W. Jarrett,
and S. Gilberson accusation made against
both Inmates. Per Order Of Harold W. Clarke,
and David A. Robinsn, Defendant Gensinger
Immediately returned both Inmates back to
Nottoway Correctional Center, from which
they were transferred from.

9). Unfortunated I was not
represented by an attorney, but
did file letter complaints requesting

(4)

Continue From Claim IV.

an Investigation. These defendants denied that request, and as the result I have kept in such high restricted security prison in punitive Confinement.

10). On or bout August 23, 2020, administrative investigation report made clear that I was not involved in the Concaw Demonstration nor encourage others to participate, I was in my Cell when warden D. Call and Lt. Ortiz entered the Pod. I was in my Cell when the Chief of Security, and Lt. white- head entered the Pod, And was in my cell During the 11:30 A.M Count.

11) Lt. Ortiz Statement, " I asked D. Brown 1131268 to Assist me to Calm the Situation and the Asst warden Jarrett instructed D. Brown to Assist him as well.

(5)

Continue From Claim IV.

12) the security Surveillance Camera clearly Show that I was Inn my cell refuting defendant D. Call, W. Surrett, and Shason Colbeason Allegation and Charge.

Red Onion Prison administrator's Contacted defendant Gensinger, and Informed him that the Charge against D. Brown 1131268 was dismissed and to Immediately transfer me back to my assigned Institution. Defendant Gensinger denied the request, and kept me at Red Onion for 10½ months.

But because the two other Inmates was represented by Attorney They was Immediately returned to Nottoway. Not me.

⑥

Continue From claim IV.

1) On the Morning of August 8, 2020, Approx 7:54 a.m. I exited My Cell and walked directly to the Barber shop Chair and Sat in the chair to have a facial shave and haircut. The Inmate Barber Instructed me to remove My face Musk.

2) Defendant D.R. Branham Sitting In the guard office which Is locate directly In front of the Barber Shop. He was Accompanies by another guard. They talking and observing the Pod. Never prior to or thereafter defendant D.R. Branham advises me to put My face Mask back on Or I Must have on the face During Barber Service.

4) On August 9, 2020, Sgt. Jones Served Upon me a disciplinary charge filed by defendant D.R. Branham accusing me of failure to follow Post Institutional Rules, not wearing a Mask

5) Sgt. Jones read the charge and read me My Rights.
   a) I requested to have Witnesses,
   b) I requested documentory evidence



*Continue from Claim No.*

c) I requested Cross Examination form,

d) requested audio evidence.

Suffice it to note Sgt. Janes did not provide me with any of the necessary forms, but he assured me that he will instruct the floor office to bring me the forms. the floor officer informed me none of the forms available in the office.

6). On August 10, 11, and 12th, 2020 I submitted inmate request forms to the defendant L.A. Mullins, Disciplinary hearing Ofc. had explained to him the necessary forms needed are not available in the housing unit and requested to him to allow to see the necessary forms. defendant L.A. Mullins did not at all response.

7). On August 13, 2020, I submitted my inmate request form to the warden, Asst. Warden, Chief of Housing, warden's secretary, chief of security, and unit manager

(3)

## Continue from Claim IV

and explained the situation and that the Disciplinary Hearing officer failed to respond. None of these individuals intervened.

8). On August 26, 2020, I was brought before the Disciplinary Hearing Officer, L.A. Mullins. Immediately I requested that the hearing be postponed. And explained the reasons for the postponement. The Hearing Officer denied my request And denied that he never received any inmate request from me. The Hearing Officer proceeded with the hearing despite My Right to call witness, present evidence In My favor, the Right to cross examine the Accuser, and to have audio security Surveillance Camera evidence

9). I pleaded Not guilty on Charges. I Made it pellucid that I was not participating In No recreational activities In the Pod and that I was In the Barbershop chair getting a shave and

③

Continue From Claim No.

haircut. I advised the Hearing Ofc.
that I had recently Arrived at the prism,
and was not aware that face guards
had to be Our face during barber
service, and no Officer advised me
of this Rule.

10) Defendant L. A. Mullins founded
me guilty based on the Reporting Ofc.
Written report.

11). There were no evidence presented
at the hearing to Support the facts findings
According to DOP.861.1 XV. section C
number 12 the security camera proves
without doubt I was not participating
in any In for Rec Activities, but Sitting
in the barber chair.

12). The Hearing Ofc. acted bias
when he Intentionally Ignored the fact
the testimony dispute the Offense report
and he failed to question the dispute
see DOP.861.1 XI section C number 4.

④

<u>Continue From Claim 12.</u>

also See DOP. 861.1 XV. section C
number 5, 6, 13 and 13(a) and 13(b)
the Disciplinary did not enter into the
record the alleged Memo that he
Outright lies and said the Memo
Made clear face guards Must be worn
at all times Iregardless of barber
service being performed. MoreOver,
documentary evidence Made clear that
the alleged Memo that he Speaks of
Issues to the general population, I
was not Assigned At the prison At
the time the Memo was Issued to
the Inmates.

13). I was funded guilty and
fined $15.00 penalty, and loss All
Incentives. And denied parole.

14). ~~I~~ Noted an Appeal.

15). Defendant L.R. Mullins denied
Me an Appeal by virtually denied me
a Appeal package. See DOP. 861.1

⑤

## Continue From claim XV:

XVIII. The defendant L.A. Mullins did not provide me Appeal package for 4-5 months thereafter the hearing despite writing to him and the entire prison Administrators Complaining that the Disciplinary Hearing Office refuses to provide me Appeal package. See DOP 861.1 Section XVII.

16). April 15, 2020, I filed a letter complaint with the Chief of Operation David A. Robinson In effort to remedy myrias Violations of Substantial and procedural Due Process Rights during the entire Disciplinary process of service, Disciplinary hearing, And denial of an Appeal.

17). On May 12, 2021, defendant Karen Stapleton, Disciplinary Unit Manager responded. She arbitrarily claimed that On 9/4/20 defendant L.A. Mullins

Continue From claim V.

attorneys are every Opportunity to Appeal.
Appeal package was presented to You
and You refused to Sign the Certificate
Of Service form see DOP.861.1 section
XIVII (B) the record Indicates No
Appeal was filed Therefore, the time to
file an Appeal has Expired.

18). I Immediately responded to
defendant Karen Stapleton letter response,
and Advised her that Her Disciplinary
Hearing Officer L.A. Mullins Outright lied
to her and acted In bad faith,
Vexatiously, wantonly, or for Oppressive
reason, as well as for willful abuse
Of authority and administrative
Disciplinary Process.
More fundamentally, Mullins Novel
Attempt to Validate a Valid Claim
that he Altered and falsified the
record, and Outright lied to protect
himself.

Continue From Claim 19.

From the Allegations made against him. I pointed Out to Defendant Stapleton that 1) Appeal package was never presented to me 2) I Never did refuse to Sign the Certificate of Service, 3) There is not a Staff witness to Varify that I refused to Sign the Certificate of service, 4) DOP. 861. Directive prohibit Any disciplinary action to be had thereafter Normal Operation hours.

5) The service Office claimed that he presented the Appeal package At 1: Oclock a.m in the Morning. Defendant Karen Stapleton did not respond.

19) On May 15, 2021, I promptly written a letter complaint to defendant Harold W. Clarke seeking an Investigation Into defendant L. A. Mullins and Karen Stapleton engages In a Conspiracy to deprive me of My Constitutional Rights.

⑧

<u>Continue From claim V.</u>

And that defendant Mullins " Apocryphal
and specious " Misrepresentations of the
facts to defendant Karen Stapleton,
and that she had Unwittingly Allowed
herself to become goased Into participating
In a civil Conspiracy to Obstruct Justice.

I advised Mrs Clarke that defendant
L.A. Mullins Altered the records and
falsified documents, Thereafter, I had
filed a complaint against him. And
that Ms. Stapleton sent to me the
Original document that clearly proves
that the document was Altered,
Falsified, and manufactured.

Mr. Zachary Davis responses.
In an attempt to settled the dispute
by sending me appeal package. I
proceeded with the Appeal. defendant
Karen Stapleton Intervenes and
blocked my Appeal. being filed.

Continue From Claim
VI.

① Plaintiff brings this action
against these prison officials, D Call,
warden, W. Jarrett, Asst. warden,
and S. Gilberson, Unit Manager, Alleging
that these Individual together Initiated
a Conspiracy to justify retaliatory
transfer and to protect their wrongdoings
by virtually filing administrative
Disciplinary and Incidental Investigative
report accusing me of participating in
and encouraging others to participate
in a group Demonstration Knowingly
with knowledge of its falsity or
reckless disregard for the truth.
I was accused to return to my
Upon Order by Warden D. Call and
W. Jarrett, I was accused of
refusing to go in My Cell for the
11:30 a.m. account.

①

Continue From Claim
VI.

2) Suffice it to note primarily
for the record. On day Of the
demonsration June 28, 2020, defendant
S. Gilberson was not At no time
present At the Institution, put She
filed the Disciplinary Charge's and
administrative Investigative reports
As a Collective, and retatiatory
Measure, to justify the emergency
administrative transfer to a high
restrictive security Supermax prison,
punitive Confinement, and to Cover-up
defendant W. Jarrett Conduct that
provoked the Demonstration, and to
cover up the Concocted false
reports he and the warden Written.

Continue From claim
               VI.

3). Gilberson " apocrphal and specious Misrepresentations to high ranking prison officials clearly proves that she had Unwittingly Allowed herself to become goaded Into participating In a Administrative Conspiracy to deprive Me of My Rights accosted by Warden D. Call and W. Jarrett. Again, defendant S. Gilberson was not present At the Institution during the demonstration, She Know Nothing at All about the Situation, Yet accused Me of being Involved.

4) An administrative Disciplinary Investigation revealed that Warden D. call and W. Jarrett lies about the entire event withheld partinent Information that proves I was not Involved In the Demonstration.

③

<u>Continue From Claim VII.</u>

This claim arises as the result of deprivation of personal property absent of Due Process. A. Jackson, Institutional Grievance Coordinator for Nottoway Corr. Ctr. On June 28, 2020, Security Strike force removed me out of my cell in handcuff and put me on a bus and transferred me to Red Onion Supermax prism, and put me in restrict punitive Isolation. All of my personal property was left in the cell.

On August 7, 2020, I resubmitted my Informal grievance complaint No. NCC--20-Inf-02609. On 8/19/2020, the Informal complaint was responsed to. On Sept. 3, 2020, I proceed to file a regular grievance. On 9/17/2020, Ms. A. Jackson refuses to process my grievance stating that I must provide her office with a lost and missing property report.

Under VDOC OP 802. States "within 7 days of the receipt of Notice to file a grievance." VDOC OP 866.1 States "I have 15 days to file a grievance

①

<u>Continue From claim VII.</u>

My property was not lost or missing
All of My property was Confined and
secured in My Cell D2-48.

defendant A. Jackson novel Attempt
to Valiate a Valid claim by Virtually
given me 3 days to resubmit My grievance
with the property lost or missing form
Attached. Nolloway Correctional Center,
did not respond to the lost-missing
property form within the 5 day period
and Could not responded when
Calculating the date which Ms. A.
Jackson responded. to the Informal
Complaint, the date when I receives
her response, and the date I
resubmitted the grievance.
Ms. A. Jackson took Unfair
advantage of the grievance process
the very same as she did destroying
My documents filed against the
Warden and Asst. Warden.

2

Continue From claim
VIII.

Plaintiff brings this action against Harold W. Clarke, Director, David A. Robinson, Chief of Operation, Mark Amonett, Chief Physician and Christopher J. Christopher Gensinger, Chief Classification Manager.

1). These prison officials acted deliberate Indifference to My serious Medical Needs and Condition. In Violation of My Eighth Amendment Right.

2). Plaintiff a 63 yrs. old prisoner born with a rare deadly heart disease Rheumatic fever. I have had 4 Open heart surgeries, have two (2) Machanical heart Valves, and a ICDS/paces.

3). It Is well documented In My prison Medical record that advise against Incarcerating me In remote location absent of a Major hospital with a trauma Unit within reasonable

①

Continue From claim
VIII.

distance to and from the prison,
and shall be confined by a prison that
has 24-7 Medical Supervision, Medical
staff capable of responding to Cardiac
emergency, and equipe with the necessary
Medical equirepment to respond to Medical
emergency related to Valve or ICDS
issues.

4) Upon arrival at Red Onion
State prison. The physician Met with me
and she performed a *physical*
examination, ordered a EKG and Lab
test. Suffice it to say the prison Medical
Dept. dosen't have Echocardiogram,
Electrophysiology or ICDS Equirepment
to Interrogative the Valves and Defribilater
and paces.

5) There is no Medical Staff After
5 oclock p.m. that are trained,
Educated, Knowledgeable, skilled, or
Experienced in the Area of

(2)

Continue From claim
        VIII.

Cardiologist or Electrophysiology
to respond to an emergency. Nor is there
a hospital within reasonable distance
nevertheless, a hospital with a trauma
Unit or rescue squard. near by.

1) The physician made it pellucid that
Me being in such remote Area poses a
substantial risk of harm or serious
Injury. She advised me she's going to
Consult with Richmond and recommend
that I be Immediately transferred.

2) the defendants disapproved the
physician recommendation. which Constitutes
reckless disregard for, and deliberate
Indifference to My Medical Needs.

3

Continue From V. Relief

1). Plaintiff Seek from Harold W. Clarke In his Official Capacity punitive damages In the amount 1.2 Million dollars, Compensatory damages $875,000 Thousand dollars.,

2) Plaintiff Seek from David A. Robinson In his Official Capacity 1.2 Million dollars and Compensatory damages $875,000 Thousand dollars.

3). Plaintiff Seek from George M. Hinkle, In his Official Capacity 2.5 Million dollars and Compensatory damages 1.1 Million dollars,

4). Plaintiff Seek from D. Call In his official capacity 3.5 Million dollars In punitive damages, 3.1 Million dollars In Compensatory damages.,
a) In his Individual personal Capacity plaintiff see 1.5 Million dollars In punitive damages and 1 Million dollars In Compensatory damages

5) Plaintiff Seek from W. Jarrett In his Official Capacity 3.5 Million dollars In punitive damages, 3.1 Million dollars In Compensatory damages,

Continue From V. Relief

6). Plaintiff Seek from Mark Amonett, In his official Capacity $125,000 In punitive damages, and $110,000 In Compensatory damages;

7). Plaintiff seek from Christopher J. Gensinger 3.5 Million dollars In punitive damage and 1.5 Million dollars In Compensatory damages In his official and Individual personal Capacity

8). Plaintiff Seek from A. Jackson, In her official Capacity 2.5 Million dollars In damages, and 1.5 million dollars In Compensatory damages

as In her Individual personal Capacity plaintiff Seek $975,000 punitive damages, and $625,000 In Compensatory damages.

10). Plaintiff Seek from L.A. Mullins, B. Fram, Sgt. and Karen Stapleton In their Individual and official Capacity, $650,000 dollars In punitive dollars and 350,000

Continue From V. Relief

In Compensatory damages.

11) plaintiff seeks Injunctive relief Compel the defendant Harold W. Clarke, David A. Robinson, George M. Hunkle, and Christopher J. Gensinger to Expung from hie Institution record the Disciplinary Report, and Expung from hie record All of the administrative, Disciplinary, Incidental report, and Investigative report file In hie record that was Used against plaintiff In September 2020 classification and Parole hearing.

12) Compel the defendant L.A. Mullins to reimburse him $15.00 In fine's with Interest

13. Plaintiff seek declaratory Judgement

14). Plaintiff seek from O.Giliberson punitive damage and Compensatory damages In the amount of $750,00 In her official and Individual personal Capacity.