CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

January 14, 2026

LAURA A. AUSTIN, CLERK
BY: s/A. Beeson
         DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| **DEMMERICK E. BROWN,** ) | |
| Plaintiff, ) | Civil Action No. 7:22cv00349 |
| ) | |
| v. ) | MEMORANDUM OPINION |
| ) | |
| **KAREN STAPLETON, et al.,** ) | By:  Robert S. Ballou |
| Defendants. ) | United States District Judge |

Plaintiff Demmerick E. Brown, a Virginia inmate proceeding *pro se*, filed this action pursuant to 42 U.S.C. § 1983, alleging violation of his Due Process rights at a prison disciplinary hearing in August 2022, resulting in a fine of $7.00, paid from Brown's prisoner trust account. This court previously granted the defendants' Motion to Dismiss, finding that the hearing did not deprive Brown of a constitutionally recognized property or liberty interest. Brown appealed that decision. Thereafter, the Fourth Circuit Court of Appeals entered a published opinion in *Henderson v. Harmon*, recognizing a protected property interest in an inmate's money in his trust account. 102 F.4th 242, 248 (4th Cir. 2024). Based upon *Henderson*, the Fourth Circuit reversed this court's prior decision and remanded the case for determination of what process Brown was due and whether any violations of his rights in the disciplinary proceedings were harmless. This court directed the parties to brief these issues. In response, the defendants filed a Motion for Summary Judgment to which the plaintiff has responded. The plaintiff has also filed his own Motion for Summary Judgment on the issues. I will grant the defendants' Motion for Summary Judgment because I find that any error in the disciplinary proceedings was harmless and that the defendants are protected by qualified immunity, and I will deny the plaintiff's Motion for Summary Judgment.

## I. FACTUAL BACKGROUND

Brown was an inmate at Red Onion State Prison in August 2020, having been transferred from Nottoway Correctional Center. Because of the then-ongoing COVID-19 pandemic, Red Onion had adopted a policy requiring inmates to wear "sneeze guards" (masks) whenever out of their cells. The policy was incorporated into a memo, posted in Brown's pod, that said in boldface letters: **"All inmates are now required to wear their Sneeze Guards at all times unless instructed to remove it by a staff member**." Dkt. No. 60-4 at 1; Dkt. No. 60-1 at ¶ 5.

On August 9,[1] 2020, at approximately 7:54 a.m., the inmates on the bottom tier of A-6 pod were released for recreation. C.O. Branham advised the inmates that "Sneeze Guards were mandatory during pod recreation." Dkt. No. 60-1 at p. 46. Brown walked across to the barber shop and sat down in the chair to be shaved; the inmate barber told him to remove his face mask, and he did, so that the barber could shave him and cut his hair. C.O. Branham and another officer were in the guard office directly in front of the barber shop, and they did not say anything to Brown at the time, but Branham wrote a disciplinary charge for failure to follow written or posted institutional rules. Later that day, Sgt. Jones served Brown with the charges. The disciplinary charging document, in addition to describing the charges and the date Brown was served, listed several rights and asked Brown if he wished to exercise those rights. As relevant here, Brown declined an advisor to assist at the hearing, but he wanted forms to request witnesses and documentary evidence, and he wanted to be present at the hearing. At the bottom of the form, next to Sgt. Jones's signature, "yes" was checked next to "Forms provided at service (if requested)." *Id.*

---

[1] Plaintiff's complaint alleges that this occurred on August 8, 2020, but the Disciplinary Offense Report prepared right after the offense says August 9. This difference is not material to the determination of the case.

In his complaint, Brown asserts that Jones did not provide him the forms when the charge was served, but assured Brown that he would have the floor officer bring him the forms. The floor officer then told Brown that the forms were not available in the office. Brown asserts that he sent inmate request forms to the hearing officer, defendant Mullins, to request the forms for witnesses and evidence, but he never heard from Mullins in response. He then sent an inmate request form to the Warden, Assistant Warden, and others, but he never received the forms.

The disciplinary hearing was held over speaker phone (due to COVID-19 protocols) on August 26, 2020, and Brown pled "not guilty." The hearing was audiotaped, but the quality of the recording is variable, such that not all spoken words could be understood. It was apparent on the tape that Brown specifically raised a due process issue about the inability to have his witnesses and exhibits at the hearing because he could never get the proper forms. In denying Brown's objection, the hearing officer essentially stated that Brown could have gotten the proper forms from anyone, because he was housed in general population. Brown attempted to respond to the hearing officer, but what he said could not be understood because he was talking over the hearing officer, who then told Brown to be quiet. Audiotape ref'd in Dkt. No. 60-2.

Mullins summarized the disciplinary report prepared by Officer Branham and then gave Brown the opportunity to make a statement. Brown stated that he was new to Red Onion, that he did not know he needed to wear his mask while in the barber's chair, that he had his mask on when he left his cell, that he had wanted the audio exhibit to demonstrate that the barber told him to take off his mask, and that he was not participating in pod recreation when he took his mask off at the barber's request. *Id.* Based upon Officer Branham's written disciplinary report and Brown's admission that he took his mask off after sitting in the barber's chair, Mullins found Brown guilty of failing to follow written or posted institutional rules and imposed a $7.00 fine.

3

Dkt. No. 60-1 at p. 47.  Mullins' written decision also indicated that the posted written policy required offenders to wear their sneeze guards any time they are outside their cells; there was no exception for being in a barber's chair.  *Id.*  Mullins stated in his affidavit that he advised Brown of his right to appeal (*id.* at ¶ 13), which is corroborated by the audiotape of the hearing.

Brown asserted in his claim that he was never provided an appeal package.  Both Mullins and Stapleton attached the disciplinary file to their respective affidavits, which contains a notice signed by defendant Farmer, stating the appeal package was delivered on September 4, 2020, and that Brown refused to sign for it.  Brown stated that he received the package four or five months later, and that when he tried to file his appeal, he was told that the time had expired.  On April 15, 2021,[2] Brown complained to Department of Corrections (DOC) Chief of Operations, David A. Robinson.  Defendant Stapleton, the Disciplinary Unit Manager, responded on May 12, 2021, advising that Brown had refused to sign for the appeal package when it was presented to him on September 4, 2020.  Brown responded with an accusation that Mullins was lying because he had never received the appeal package.  Compl. at 44–45.  Brown then wrote DOC Director Harold Clarke, explaining his situation and accusing Mullins of altering the records and falsifying documents.  Zachary Davis responded by sending an appeal package to Brown, so that he could file a late appeal.  Stapleton allegedly blocked the appeal from moving forward.

## II.  STANDARD OF REVIEW

In ruling on a motion for summary judgment under Rule 56, the court must determine whether there is a genuine dispute over a material fact.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A factual dispute is genuine if there is some real evidence to support a factual claim contrary to that asserted by the party moving for summary judgment. The non-moving

---

[2] Brown inadvertently stated April 15, 2020, in his complaint, but this is not possible, because he had not yet been moved to Red Onion, nor had he been charged with the offense yet.

4

party cannot rely on matters pleaded in his complaint; rather, he must respond to the motion with real evidence, such as a factual affidavit. *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) and FED. R. CIV. P. 56(e)). A fact is material if it could affect the outcome of the trial. If a jury could return a verdict for either party, depending on which facts it believes, then the moving party is not entitled to summary judgment. *Anderson,* 477 U.S. at 248. The court must draw all reasonable inferences from the evidence in favor of the non-moving party. The court may not consider the weight of the evidence or credibility of the parties, because that is the function of the factfinder. *Alexander v. Connor*, 105 F.4th 174, 178–79 (4th Cir. 2024).

### III. DISCUSSION

The Fourth Circuit remanded for this court to address two issues not previously reached: (1) what process a prisoner is due before he can be deprived of his property interest in money in his prisoner trust account and (2) whether any failure to provide required process is harmless error. In their Motion for Summary Judgment, the defendants also raised the issue of qualified immunity. I will address each of these issues in turn.

**1. What Process is Due**

Brown alleges that his procedural due process rights were violated because he was denied the opportunity to call witnesses, denied the opportunity to introduce documentary/tangible evidence (video and audio evidence), denied the right to cross examine his accuser, and denied the right to appeal the finding of guilt. The defendants contend that he was not denied the right to call witnesses and introduce documentary, video, and/or tangible evidence, nor the right to appeal. They further contend that he had no right to cross-examine his accuser in a prison disciplinary hearing. Finally, they argue that any procedural denial was harmless.

Prisoners may not be deprived of life, liberty, or property without due process of law, but these rights are "subject to restrictions imposed by the nature of the regime to which they have been lawfully committed." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). Prison disciplinary proceedings are not on the same footing as criminal prosecutions, and "the full panoply of rights" due to a defendant in criminal proceedings does not apply to prison disciplinary proceedings. *Id.* The hallmark of due process is the opportunity to be heard "at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (internal quotations and citation omitted). Courts have consistently held that some kind of hearing is required at some time before a person is finally deprived of his property. *Wolff,* 418 U.S. 557–58. Due process is a flexible concept, calling for such procedural protections as a particular situation demands. *Mathews*, 424 U.S. at 334. When determining "what process is due," the Supreme Court has directed courts to consider and weigh three factors: (1) the private interest that will be affected by government action; (2) the risk of an erroneous deprivation of the interest and the expected value (if any) of additional procedural safeguards to prevent an erroneous deprivation; and (3) the government's interest, including the function the government is carrying out and the financial and administrative burdens that additional procedures might involve. *Id.* at 335.

The defendants contend that the process due for deprivation of a small property interest is minimal, perhaps even less than that required to deprive a prisoner of a liberty interest, such as good time credits. *See* Dkt. No. 60 at 10. The Supreme Court, however, indicated that the due process analysis for liberty interests is parallel to the analysis for property interests, not greater or lesser. *Wolff*, 418 U.S. at 557. The Court in *Wolff* weighed the factors involved in prison disciplinary proceedings to identify the appropriate due process safeguards, especially given the stakes involved in the prison disciplinary context. Prison authorities must provide reasonable

6

personal safety for both guards and inmates in a closed, tightly controlled environment; they must deal with the impact of disciplinary confrontations on the escalation of personal antagonism and its effects on correctional goals. Finally, prison disciplinary systems play a major role in furthering the institutional goal of modifying inmates' behavior and value systems sufficiently to enable them to live law-abiding lives when they are released. *Id.* at 562–63. For these reasons, the Court recognized the need for greater flexibility in the application of due process principles in the prison disciplinary context. With those considerations in mind, the Court identified what process is due in prison disciplinary proceedings:

1. Written notice of the charges at least 24 hours before the hearing;

2. An impartial decision-maker;

3. The opportunity to call witnesses and present documentary evidence, *provided that no threat to institutional safety or correctional goals is created by permitting the opportunity;*

4. Help from a fellow inmate or staff representative if the inmate needs help or the issues are complex; and

5. A written statement by the factfinder describing the evidence relied upon.

*Id.* at 563–69.

The Court in *Wolff* specifically declined to include the right to confront and cross-examine one's accuser as a due process right in prison disciplinary hearings. *Id.* at 568. Thus, Brown's rights were not violated by the inability to cross-examine Officer Branham. Likewise, the Court noted that the Nebraska prison in *Wolff* did not provide for administrative review of the disciplinary decision, and the Court did not include review or appeal of disciplinary hearings as a requirement of due process. *Id.* at 565. *See also Rogers v. Brinkley*, No. C A 806-1278MBS,

7

2007 WL 789929, at *2 (D.S.C. Mar. 14, 2007), *aff'd* 231 F. App'x 280 (4th Cir. 2007) (noting that "*Wolff* did not mandate that prison officials provide inmates with an appeal of disciplinary hearing findings."). Any dispute on whether Brown received a timely appeal package becomes moot, when there is no constitutional due process right to appeal a disciplinary hearing decision.

Had Brown submitted an affidavit with his brief in opposition to the defendants' Motion for Summary Judgment, or even if his complaint had been verified (made under oath that the facts alleged in the Complaint were made on the basis of his personal knowledge), there would be several potential genuine issues of disputed material fact regarding whether Brown had an opportunity to call witnesses and present video and audio evidence: Whether the necessary forms to request witnesses and evidence were provided to Brown when he was served with the charge, whether those request forms were available in the pod, and what efforts Brown had made to obtain them. However, the non-moving party cannot rely on his unverified complaint or pleadings to prove the existence of a genuine disputed fact. *Williams*, 952 F.2d at 823. Mere assertions in an unverified pleading are insufficient, but a verified complaint is considered an opposing affidavit for summary judgment purposes. *Goodman v. Diggs*, 986 F.3d 493, 498–99 (4th Cir. 2021).

The audio recording of the disciplinary hearing reflects that Brown raised due process concerns because he had been unable to request witnesses and evidence, and his efforts to elaborate on his argument were cut short by the hearing officer. I have concerns that the conduct of the hearing officer may have made illusory the ability of Brown to request witnesses and evidence to submit in defense of the disciplinary charges he faced. But Brown failed to offer the appropriate affidavit to raise his allegations from pleading assertions to admissible evidence. *Williams*, 952 F.2d at 823 ("As a general rule, when one party files a motion for summary

8

judgment, the non-movant cannot merely rely on matters pleaded in the complaint, but must, by factual affidavit or the like, respond to the motion.").[3] Even had he done so, under the evidence in this case, Brown could not recover, for the reasons discussed in the next two sections.

## 2. **Harmless Error**

Procedural due process errors in a prison disciplinary hearing are subject to harmless error review. *Lennear v. Wilson*, 937 F.3d 257, 276 (4th Cir. 2019). A litigant is not entitled to relief if the evidence excluded would not have helped the inmate's defense. *Henderson*, 102 F.4th 242, 248 (4th Cir. 2024). When there is no prejudice to the inmate's defense, the error is harmless. *Id.*

Brown wished to have the barber testify as a witness, presumably to say that he told Brown to take off the mask so he could be shaved. As the hearing officer stated in his written decision, the sneeze guard policy required offenders to wear their sneeze guard "any time they are outside their cell . . . and does not include any exceptions for barbering." Dkt. 60-1 at p. 47. Brown had already testified that he took the mask off for the barber to shave him. The hearing officer accepted this as true but found it not to be a defense to the charge. The barber's testimony would not change this decision.

Brown wished to introduce audio of his interactions with Branham, to show that Branham never told him to put his mask on when he left the barber shop. Again, because the masking policy was posted in the pod, it does not matter that Branham did not tell him to put the mask back on. Further, the uncontroverted representation of the defendants is that the video recordings did not include audio, so the evidence Brown wished to request did not exist. Because the audio

---

[3] The Court gave Brown notice that to oppose a motion for summary judgment, he must establish that there are specific material facts in dispute through "court transcripts and exhibits, discovery materials, electronically stored information, notarized affidavits, declarations signed under penalty of perjury, or other admissible evidence." Dkt. 61.

9

evidence did not exist, and even if it had, would not have influenced the hearing officer's decision, any error was harmless.

Finally, the video evidence that Brown wished to introduce would show that Branham and another officer were in the security booth right in front of the barber shop, the whole time, and never said anything about the sneeze guard until Brown left the barber shop. Once again, whether they said anything to Brown is irrelevant. The issue was whether he was outside his cell without the mask on. He was, and the video of guards near the barber shop was not relevant to the officer's decision, making absence of the video evidence harmless.

### 3. **Qualified immunity**

Qualified immunity shields a state actor from liability for money damages unless (1) plaintiff has alleged facts showing that the official violated a constitutional or statutory right, and (2) the right was clearly established at the time of the defendants' conduct. *Mays v. Sprinkle*, 992 F.3d 295, 301 (4th Cir. 2021) (internal quotations and citations omitted). To be clearly established, the contours of the right must be so clear that every reasonable official would have understood that the defendant's conduct violated the right. *Atkinson v. Godfrey*, 100 F.4th 498, 505 (4th Cir. 2024). The right must be specifically defined with precision, not at a high level of generality.

Although the Fourth Circuit had recognized in an unpublished decision that "[a]" prisoner has a protected property interest in his prison trust account," *Burks v. Pate,* 119 F.Appx 447, 450 (4th Cir. 2005) (per curiam), the Fourth Circuit at that time did not consider its unpublished decisions to have precedential value; "they are entitled only to the weight they generate by the persuasiveness of their reasoning." *Collins v. Pond Creek Mining Co.*, 468 F.3d 213, 219 (4th Cir. 2006). Further, *Burks* did not involve disciplinary hearings. Rather, the plaintiff in that case

10

had been assaulted by a group of other inmates and had to be taken to the emergency room for treatment.  Without any notice to the plaintiff nor opportunity to be heard, the prison deducted the $249.00 hospital bill from the plaintiff's account.  The court held that the plaintiff was entitled to advance notice and an opportunity to be heard before the prison could take money out of plaintiff's trust account.  The court did not elaborate on any other due process requirements (such as witnesses or the right to introduce documentary evidence) before taking the money, just notice and the opportunity to be heard.

On July 28, 2020, less than a month before Brown's disciplinary hearing, another jurist in this district observed that the Fourth Circuit had not addressed in a *published* opinion what monetary threshold was sufficient to implicate due process protections.  *Bowling v. Clarke*, No. 7:19cv00453, 2020 WL4340944, at *5 (W.D. Va. 2020).  Several courts in this circuit had held and continued to hold that the small fines assessed at disciplinary hearings did not trigger due process concerns in protection of this property right.  *See, e.g.*, *Riddick v. Kegley*, No. 7:20cv00562, 2023 WL 2326858, at *5 (W.D. Va. Mar. 2, 2023) (holding that a $12 fine did not implicate a constitutionally protected interest); *Roscoe v. Mullins*, No. 7:18cv00132, 2019 WL 4280057, at *3 (W.D. Va. Sept. 10, 2019) (granting summary judgment to the defendants on a due process claim where the only penalty was a $15.00 fine).  Nor have the opinions agreed on what standard to use for determining if due process rights attach.  Those focusing on the small amount of money involved in disciplinary fines implicitly are finding the private interest affected to be *de minimis* in the three-part analysis recommended by *Mathews*, 424 U.S. at 335.  Other courts have used the standard introduced in *Sandin v. Conner* to determine if a disciplinary fine is high enough to trigger due process protection:  Does the deprivation rise to the level of an atypical and significant hardship in relation to the ordinary incidents of prison life?  515 U.S.

11

472, 484 (1995); *see, e.g., Carter v. White*, No. 7:21cv00484, 2023 WL 3871719 (W.D. Va. Sept. 10, 2019) (holding fines of $10 and $15 did not rise to the level of an atypical and significant hardship implicating due process protections).

As late as 2023, district courts observed that neither the Supreme Court nor the Fourth Circuit had identified "the threshold at which the Due Process Clause is implicated when it comes to monetary fines." *Riddick*, 2023 WL 2326858 at *5. Even recognizing that inmates have a property interest in the proceeds of their prison accounts, the district courts continued to find that small disciplinary fines were not sufficient to trigger due process rights. When reversing the previous dismissal of this case, the Fourth Circuit Court of Appeals recognized that it decided *Henderson v. Harmon* only after this court dismissed Brown's case. *Brown v. Stapleton*, 142 F.4th 252, 257 (4th Cir. 2025). Even *Henderson* is substantially different from the routine minimal fine cases. In *Henderson*, the plaintiff and another inmate had beaten another inmate unconscious in October 2015. Following proper notice, a disciplinary hearing was held in November 2015, and Henderson was convicted of aggravated assault. In addition to 30 days of disciplinary segregation and 180 days of lost good time credit, the hearing officer indicated that the offenders would be required to pay for the victim's medical bills once they were determined. The hearing would be reconvened to determine the restitution amount owed. In 2018, the prison determined that the medical bills exceeded $10,000, and Henderson's share of the bill was $5,176.19. Without reconvening the hearing, the prison began deducting all but $5.00 of Henderson's prison account to apply towards the restitution. After he filed grievances and a lawsuit, a hearing was held on the restitution, and Henderson was ordered to pay $5,176.19, to be deducted from his prison account. Recognizing Henderson's right to due

process protection before systematically taking more than $5,000 from his prison account still did not translate into due process requirements before small disciplinary fines could be deducted.

The Fourth Circuit went farther in *Brown*, not only recognizing in a second published opinion that inmates have a property interest in their prison trust accounts, but casting doubt on the future viability of a *de minimis* floor, below which due process protections do not apply. Even if such a floor exists for property interest, the court clearly held that neither a $7.00 fine nor a $15.00 fine is *de minimis* in the prison context. *Brown*, 142 F.4th at 259.

When the courts did not recognize a constitutionally protected property interest in the small fines, the limitation of any due process protection by prison officials did not deprive an inmate of a protected property interest. *Prieto v. Clarke*, 780 F.3d 245, 248 (4th Cir. 2015). In 2020, the defendants did not and could not have known that the Fourth Circuit would extend due process protections to small fines levied against prisoner trust accounts as occurred in this case.

Brown objects to the defendants' assertion of qualified immunity, noting that the VDOC procedures introduced into evidence by the defendants with their affidavits establish what hearing officers are supposed to do. When inmates are served with charges, they are advised of their rights to call witnesses and request evidence, among other rights. Essentially, Brown is arguing that qualified immunity should not apply because they did not follow their own procedures. However, violation of internal prison policies and procedures does not automatically rise to the level of a constitutional violation; state law and/or prison administrators can grant more procedural rights than the Constitution requires. *Jackson v. Sampson*, 536 F. App'x 356, 357 (4th Cir. 2013). Liability under § 1983 is based only on violations of federal law, not on violation of state law or internal prison procedures. Accordingly, defendants are entitled to

13

qualified immunity for liability because federal constitutional law regarding Brown's claim was not clearly established in August 2020.

4. **Brown's Motion for Summary Judgment**

Many of the arguments Brown makes for summary judgment in his favor have already been addressed in discussing the defendants' motion. A few other arguments need to be addressed so that Brown can have a clearer understanding of the law in this case.

Brown asserts that the defendants have made factual claims inconsistent with the "facts" determined by the Court of Appeals. The Court of Appeals did not make factual findings, however. The court simply accepted Brown's allegations as true, as it was required to do in ruling on a Motion to Dismiss. *Brown*, 142 F.4th at 254 n.2 ("Since we are reviewing the grant of a motion to dismiss, we follow the allegations made in his complaint, not in the later submissions."). The defendants are entitled to dispute plaintiff's allegations in a Motion for Summary Judgment or at trial.

Brown states that the defendants have the burden of proving that they did not violate his constitutional rights. He is mistaken on this very fundamental issue. To prevail on a § 1983 claim, a plaintiff has the burden of establishing that he has been deprived of a Constitutional right by a person acting under color of state law. *Austin v. Paramount Parks, Inc.*, 195 F.3d 715, 727 (4th Cir. 1999). Brown cannot meet this burden on summary judgment, because defendants have offered affidavits and documentary evidence disputing some of Brown's allegations.

Brown has made conclusory allegations that Mullins fabricated evidence to cover up his denial of Brown's appeal rights. The conclusory allegations in his complaint and in his Motion for Summary Judgment do not constitute admissible evidence of any violation by Mullins. Although not stated explicitly in his complaint, Brown's Motion for Summary Judgment infers

14

that defendant Farmer assisted in Mullins' efforts by signing a form saying that he delivered Brown's appeal package on September 4, 2020. The inference is not supported by admissible evidence, and the court cannot base its decision on speculation and conclusory allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Brown makes much ado over the failure of Branham to mention in the disciplinary report that Brown was in the barber shop. As discussed previously, whether Brown was in the barber shop or anywhere else outside his cell, the issue is that his sneeze guard was off. His presence in the barber shop is of no significance to the disciplinary offense. Equally irrelevant is his argument that he was not on the pod for recreation. The posted policy required masks to be worn any time an inmate was not in his cell; it was not limited to recreation time.

Brown emphasizes that he was not at Red Onion when the memorandum about sneeze guards was distributed to the inmates and says he never received the memo. He was transferred to Red Onion on June 28, and upon initial arrival, was in restrictive housing. He had only been in general population since August 4, 2020, and states that he was unaware of the sneeze guard policy, as he never received the memo. He claims that the defendants repeatedly claim that he knew about the policy. Dkt. No. 72 at 32. The defendants have not stated in any pleading that Brown knew about the policy. The uncontradicted evidence is that the policy was posted in the common areas of the pod. Whether Brown saw the policy or not, if the regulation is constitutional, then ignorance of the regulation is not a valid due process challenge. *Gaston v. Taylor*, 946 F.2d 340, 342 (4th Cir. 1991); *cf. Cheek v. United States*, 498 U.S. 192, 199 ("The general rule that ignorance of the law or a mistake of law is no defense to criminal prosecution is deeply rooted in the American legal system.").

For the reasons discussed in this section and in the prior sections, Brown's Motion for Summary Judgment will be denied.

## IV. CONCLUSION

Because I find that violation of Brown's due process rights, if any such violation occurred, was harmless as a matter of law, I will grant the defendants' Motion for Summary Judgment. Alternatively, the defendants are entitled to qualified immunity because an inmate's property interest in small monetary fines and accompanying due process rights had not been clearly established in August 2020 when the events complained of occurred. For the reasons stated, I will also deny Brown's Motion for Summary Judgment.

An appropriate order will be entered this day.

Entered:  January 14, 2026

*Robert S. Ballou*

Robert S. Ballou
United States District Judge